Would the attorneys who are going to argue the case please approach the bench, identify yourselves and the party you represent, and indicate to the court how much time you would like to argue your position. Good afternoon, your honors. Brandon Clark for appellate Kevin Jackson. I think approximately 20 minutes. Very well. Assistant State's Attorney John Walters for appellate Kevin Jackson. Very well. Good to see you. Mr. Clark? Thank you, your honor. May I also save time for rebuttal? Just a couple of minutes. Sure. Thank you. Now, that microphone is for recording purposes only, not for amplification, so if you want to be heard by the masses out there in the courtroom, keep your voice up so they can hear you. Yes, your honor. I will. Very well. Proceed. Thank you. Your honor, my name is Brandon Clark. I represent appellate Kevin Jackson. We are here today to discuss the denial of his motion to file a successive post-conviction petition. There are primarily two errors that I would like to discuss with the court here today that were made by the circuit court. The first of which is that the court considered what it termed the quality of Mr. Jackson's evidence, and the second is that it ruled that his evidence was insufficiently conclusive to warrant further proceedings. In all other respects, Mr. Jackson rests on his briefs, unless, of course, the court has any questions about anything else within the briefs. Well, just to make sure, I mean, our review is to know here really kind of doesn't matter what the trial court did. There's no deference here to the trial court's discretion, is there? No, your honor, but I think by highlighting the few errors that the court did make, it will illuminate for the court why it should have reached a different decision and why we're asking for a different decision from this court. Before I turn to these two errors, as I mentioned, I think it will illuminate for the court why Mr. Jackson should be granted leave, there are three facts that I'd like to keep in mind. The first is that at trial, not a single witness, nobody who attested at trial identified Mr. Jackson as the shooter. The second is that, in fact, when called one of the surviving victims, testified that, and I quote, he looks nothing like the man who shot him. And third, the jury had a difficult time convicting in this case and passed a question to the judge about law on juries. I think this- Well, how do you define a difficult time? Just because he took seven or eight hours over two days? No, your honor, because the jury specifically passed a question to the judge inquiring about the law upon jury, I think that indicates that it was having a difficult time reaching consensus and goes to the weight of the evidence that was- to the amount of evidence that was presented at trial. Let's turn now to the first of the two errors that the circuit court committed in denying Mr. Jackson's motion. That is, considering the so-called quality of his evidence. The court didn't specifically say that by the way, it was concerned with primarily three things. One was the admissibility of the evidence, the second was the credibility of the evidence, and the third were conflicts in the evidence. All three of these were impermissible for the court to consider at this stage. None of them would be permissible until at least a third stage evidentiary hearing. Under Illinois Rule of Evidence 1101B3, admiss- excuse me. The rules of evidence don't apply in a post-conviction. Thank you, Your Honor. That is exactly my point. So the court's concern with that was error. Second, concerning itself with the credibility of the evidence, the court specifically stated that it found Manny Stewart's affidavit to be not credible because of his inherent bias as Mr. Jackson's cousin. The court also said that it did not find Kiana Davis's affidavit to be credible because in her affidavit, after stating that she had told the police the truth during a polygraph examination, she was then told that she had failed the polygraph examination. And on that basis, the court said that she found her to be not credible. Both of these are inappropriate, and under Illinois' recent decision in People v. Sanders, are reversible error. Third, the court was concerned with resolving conflicts in the evidence. Specifically, Mr. Jackson's petition presented the court with evidence of misconduct by the officers most involved in his investigation. I won't go through all that now. I'm sure the court is aware of the long history of citizen complaints and civil suits filed against these officers. However, the court credited the CPD and IPRA dispositions of these complaints over the conflicting evidence of the recent DOJ report, stating that those investigations have primarily, or maybe not primarily, but in large part, been poorly done. Now, whether... But the burden's on you at this point. I mean, the burden's not on anybody other than you at this point, right? Yes, Your Honor, it really is. Okay. So, putting aside the quality issues, you needed to come forward with evidence, and the reality is that even though you had to work very hard to get those logs, and I understand that, they don't really say anything. Well, Your Honor, turning to those logs, the court found, which I would note was inappropriate, should not be making factual findings at this point, but the court found that the CRs were primarily for minor things in the court's words, such as stealing office supplies. That's simply not borne out by the record. Of the 150 CRs involved in these seven detectives, 48 were for use of excessive force. Thirty were for... Interesting. Very few. Like, how many? A handful. I'm not sure of an exact number of less than ten. And also, as long as we really don't know what the facts are of any of those, whether they're similar, we really don't know, based on the log. Correct, Your Honor. What you're alleging happened here is similar to what happened in any of those other cases. Correct. Which is what you would need to show ultimately, is it not? And in evidence you're hearing, that is exactly what we would need to show. You're right. I think that on this point, this Court's decisions in P.V. Tyler and P.V. Reyes are illustrative. Beginning with P.V. Reyes, in that case, similar to here, there was a murder conviction based on witness testimony. There was also confession in that case, which we do not have here. The defendant in that case filed his motion and provided a newspaper article, 23 C.R.s., and an F.B.I. report that suggested that the single detective that was being accused of misconduct had a pattern of practice of such misconduct. This Court found that on the basis of just those few allegations against a single detective that the defendant had made an assurance of actual innocence, in spite of the fact that most of the claims had occurred as many as five years, I'm sorry, excuse me, most recently, five years prior to his trial, and yet found that evidence was new, material, non-cumulative, and conclusive of innocence. Similarly, in P.V. Tyler, which I think is a... All right. Well, let's talk about your evidence of actual innocence. Really looking at the misconduct part of your evidence, right? I sort of look at yours as the eyewitness part and the misconduct part. Is that fair? Sure. Okay. So looking at the misconduct part, I don't see how that goes to actual innocence at all. I don't see how that's freestanding proof of actual innocence at all. And I think the Supreme Court has made clear and openly that it's got to be freestanding. You've got to look at that evidence and say, that guy didn't do it. All we know from that evidence is these cops might be lying because they've lied before, and they've done what you've said they've done. They've done in other cases. That doesn't mean by itself in a freestanding way that your guy's innocent. Well, you know, I think that, like I mentioned, P.V. Tyler and Reyes have gone the other way on very similar claims. See, if the Supreme Court goes one way and we go another way, we're bound by what the Supreme Court says. Of course you are. And so for that, I would say I would turn then to our claim under the cause and prejudice test, where, as the Court surely knows, we must show a cause for not having raised the claim previously and prejudice wherein therefrom. I think that the cause element we've already covered, the fact that the evidence was new, difficult to find, so on and so forth. The prejudice wherein therefrom is clearly that without the ability to impeach these officers at trial on the basis of this evidence, the jury was left with recanted testimony from witnesses and a seemingly sterling record of the police in front of them upon which to determine whether or not those recantations were true or not. And that's where the point you started out with, which is how close the evidence was in this case. Yes, Your Honor. Yes, Your Honor. This is very much like B. Roviel-Motivar in        Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes.                  Yes, I just want to make it clear that on the grounds of the case in question, there were no speeches of one and two, there were no と ere ministerial police misconduct, there were coerced statements. There is no physical evidence tying that defendant or Mr. Jackson to their claims, and on the basis of recanted witness statements and a single, I believe, article out of the Tribune about this officer, this court held that Mr. How many years after the trial? Excuse me, Your Honor. How many years after the trial was the article in the newspaper? I don't recall, Your Honor. Well over ten. Yes, Your Honor. Correct? That very well could be. I would have to check. So how can you impeach an officer about events that took place ten to twelve years after the incident on trial? Are you speaking in view of your own memory or in our case, Your Honor? In your case. In our case. So you just said that you wanted that the defendant was entitled, if he had this information, he could impeach the officer's testimony. Yes, Your Honor. Well, how can you impeach the officer's testimony in 2003, when the trial was, with complaints that were lodged in 2009, 10, 11, 12, and a newspaper article in 13, and a Justice Department report in 14, 15? Your Honor, I absolutely hit on the reflex of the post-conviction proceedings. It's a collateral attack. We actually are required to have new information. So the fact that the allegations were not known at the time of trial is actually a ways in favor. They didn't even happen at the time of trial. Exactly, Your Honor. So there's a, the, say this court at this stage, and the circuit court previously, should not engage in fact-finding on the basis of these CRs. So taking Petitioner's allegations as true, that these CRs show misconduct similar to the type that has been alleged here. They show that these officers have, over the course of many years, engaged in this pattern and practice of misconduct. And that, the fact that it has continued beyond his conviction, actually lays in favor of granting a third-stage evidentiary hearing, or even for that matter, a second-stage hearing, in order to further probe the evidence of actual innocence, or causing prejudice, as the case may be. Well, the entire trial consisted of witnesses who gave statements to the police the night of, or the next day, implicating the defendant. Not quite, Your Honor, if I may. Pretty much so. And that those same witnesses, who were called to testify, not all of them, but those who did testify, all recanted. Yes, Your Honor. And they all recanted, essentially saying that they were coerced into making these statements against the defendant by these police officers. Yes, Your Honor. That issue was entirely in front of the jury. Yes, Your Honor. How would this purported relevant evidence that took place allegedly, most of which, the overwhelming majority of which, have never been sustained by anyone? Your Honor, how would that all change? This is actually not a novel situation. We think that this case fits squarely within, as I mentioned, Tyler and Reyes. In both cases, allegations of police misconduct were before the jury, but without the supporting evidence. And this Court, as well as the people of E. Mitchell, said that, let me get the exact quote here, that any evidence of prior misconduct by the detectives, testifying detectives, significantly shifts the balance of credibility against those detectives. And that's exactly the point here. The recanted, the witnesses who were recanting already had questionable credibility on the basis of those recantations. The fact that there was no supporting evidence of the police misconduct at the trial is, I believe, dispositive here of the fact that, had that evidence been presented to the jury, it would have made a different credibility determination. And the jury's credibility determination is all that supports Mr. Jackson's conviction. At what point is the post-conviction judge supposed to make a determination that what you think is probative and impeaching of the officer's testimony is not relevant? Because if a complaint was made five years after this incident that was not sustained, and we don't even know what the complaint was about, even though it may have been against an officer, what basis does that give any court to say, oh, that was really important information that the defendant should have had available to him? When do you make that decision? I can sense the Honor's concern about relying on the CRs and admit that at this stage we had less information about them than we would like. I think it's an entirely different situation with the civil suits that have been brought against these officers. For example, I think Beverly Eberle, which we've said in our papers, is a very similar factual situation in which Detective Thorberg, who was one of the primary detectives, one of the arresting officers in this case, was sued in a civil case along with other officers who had been involved. The allegations were that the suspect was held for more than 63 hours before being brought before a judge. Two witnesses were held for extended periods of time, coerced into giving statements that later were canted, and eventually charges three years later were dropped against the suspect. Now, I recognize that that decision, it was a federal decision, resulted in a dismissal, but that's because there was a prior class action suit that the plaintiffs should have been part of. The allegations... Is that under Gerstein here? I'm sorry? Is that under Gerstein? I'm sorry, I'm not aware. Gerstein, who was holding people for more than 42 hours or 48 hours without charges. It must have been, Your Honor. The decision didn't actually reference what the case had been. However, both sides, the detective side and the plaintiff, admitted to these facts. This is troubling conduct, I believe, and it's exactly the type of conduct that we've alleged here. Had that been in front of the jury, I think it would very likely have made a difference, especially keeping in mind that the relatively limited evidence of guilt that had been presented at trial, and under recent Illinois Supreme Court case, People v. Coleman, we should consider the conclusiveness of the evidence presented in the post-conviction petition against the evidence that was adduced at trial. I think we're balancing the evidence presented against Mr. Jackson with the evidence that he's presented in his motion, whether it's the CRs, whether it's the civil complaints, whether it's the information we have from the DOJ report about the veracity of the dispositions of the CRs. I think balancing all that information and keeping in mind that at this point, all Mr. Jackson is seeking is leave to file successive petition. He still must make a substantial showing of constitutional violation at the second stage and still must get to an evidentiary hearing, at which point he'd present evidence, before he would be granted a new trial. And even at that stage, the court's not to redetermine his guilt or innocence. Rather, simply to determine whether or not he's made a sufficient showing of probability of a different result on retrial that would grant him the right to have a retrial. So I think the circuit court put the cart well in front of the horse here. The circuit court should have looked at Mr. Jackson's petition, his allegations of misconduct, his supporting evidence of misconduct, and should have docketed it for a second stage proceeding, which is what we would ask the court to do here today. And unless there are any other questions, I would yield the rest of my time. Thank you very much. Thank you. Mr. Clark. May it please the Court. The standard that was before this Court, and before this Court and also before Judge Clay, is whether the defendant made a culpable claim. Excuse me. I almost spoke. Mr. Walters. Correct. It's whether the defendant made a culpable claim of actual innocence. Or a cause in prejudice. Or a cause in prejudice. That's true. But I'm directing the first part of this towards actual innocence, because that's then the main thrust of the defendant's presentation both below and in his briefs. I'm going to start there, but I will also address cause in prejudice. Now, with respect to cause in prejudice, the standard is well known. It's set out in People v. Edwards by our Illinois Supreme Court, and that is that the evidence that the defendant presents, if the burden is on the defendant, to present evidence that raises the probability that it is more likely than not that no reasonable juror would have convicted the defendant in light of the new evidence. That's the standard. This is not a first stage standard. This is not a low-threshold gist or arguable-ness sort of standard. This is a standard that the defendant must meet in order to proceed on a successive post-conviction petition. And there are very good policy reasons behind that. Now, with respect to the evidence that the defendant has presented, his documentation, it is totally insufficient. It does not meet that standard. So Judge Clay's ruling ultimately was correct. Was she really focused on the affidavits, which are really not about the police misconduct? Correct. That's where her focus was. And then she focused on the laws, but she really didn't focus on People v. Harris or the case that your opposing counsel just mentioned, in which there were findings, there were stipulations that these same detectives actually did keep people 63 hours, kept a witness somewhere until she peed in their pants. That really happened. There's a finding that that happened. Why wouldn't where the, you know, where it's so close to the balance, if this case was people telling one story one time and a different story another time, why wouldn't that be present? Why wouldn't that suggest that it could have come out the other way if they knew these cops had done the same thing in other cases? Well, I paid particular attention to Judge Leinan-Weber's rulings, and that's Breyer v. Eberle. It is actually seriously. I'm not talking about his ruling. I'm talking about the stipulation that the parties did in that case. They stipulated this stuff. Well, let me be very clear about this. It was a motion for summary judgment, so the facts had to be taken as plied. But I just want to point out. It says it's a stipulation is what it says in the opinion. Well, the parties stipulated. It's a motion for summary judgment, so you put in evidence, you put in stipulations. It's not taking allegations. It's true. Here's something else I want to point out, though. Judge Leinan-Weber specifically said that there was conflicting evidence on that point. I'm sorry. The following facts on which the parties agree, unless otherwise indicated. Unless otherwise indicated. And there's nothing indicating that there's any disagreement on Breyer v. Eberle was interrogated for 63 hours. Rose was questioned in the widowless room for many hours without a bathroom break and at one point urinated in the interrogation room. Nothing that suggests there's any question about either of those things. In that paragraph. Yeah. Is there someone else that I haven't seen? With respect, Judge Leinan-Weber, and it may not be that particular ruling. There was a series of three. Did you cite this in your brief? I believe I did. Okay. I'm not sure if I cited that particular point. I know it's there. Okay. I know what you say is there. That Judge Leinan-Weber indicated that there was conflicting evidence on that point. That the police said that they gave her bathroom breaks. They gave her bathroom breaks at some point. Does that mean she was held one heading? The 63 hours. The 63 hours. Okay. And with respect to that, Judge Leinan-Weber at the time, in view of all that evidence, still found that there was no cause of action. That the defendant was going to stay at home. That's not the issue before us. We don't care whether there's cause of action in that case or not. What we care is if these police officers, if there's evidence, as opposed to allegations, evidence that these same police officers acted in the way that these witnesses clearly acted in this case. If there's evidence of that, that could tip it. Could it not? With respect, that evidence has to be substantiated. There has to be something to it. It can't just be a mere allegation. As the Supreme Court has set out in the Coleman case, Deidre Coleman that I cited, it's cited in the Nelson case. There's a series of cases, Porter-Bowens, Cassini that I cited too. All of them require there to be some substantiation. And this is with respect to both the allegations regarding civil lawsuits and EOPS complaints. There has to be something that substantiates it. So, regardless of whether there was a stipulation, the point is that in that particular case, Judge Leinwender made a finding that didn't substantiate that there was an illegal coercion, illegal police conduct in that case. And that was affirmed by the Seventh Circuit. Okay. But there's no finding that what they say happened didn't happen by Judge Leinwender. That's true. He was made out of prison to the level he was looking for. They're not trying to prove a civil case against these police officers in this case. They're trying to say the way these witnesses say these police acted, boy, they acted like that a lot, or they acted like that in other cases. That's all they're trying to do. And if they can make that showing, don't you think that could change the outcome here? Could. No, not on the facts of this case. Because? Not given all the other evidence. All the other evidence. Well, there is no other evidence. The evidence is that the witnesses said one thing to the police, something different at trial. They say the reason we said that to the police is the police coerced us. Is there any other evidence? Yes, there is. What's I missing? Well, for one thing, it was evidence that they were intimidated to flip their testimony by the defendant. What was the evidence of that? I know that was the theory, but what's the evidence of that? That was in Shemekah Mason's statement. That was in Thurman Clay's statement. Shemekah mentioned that the defendant himself came over to Canada Davis's house right at, I think, the night after the shooting. Shemekah was there, Randy Butler, another one of the witnesses. This was all in the statements they gave the police initially? Yes. Okay. Okay. Their story is they told the police initially exactly what the police wanted them to tell them. And then they said later, then we only told them that because we were intimidated. Is there anything else? Is there any other evidence in this case that pins this on the defendant? There's evidence that corroborates the witnesses. What is that? There were shots fired. Everybody knows there were shots fired. There's somebody killed. Right. What's the corroborating evidence that it was the defendant? Well, there was evidence that this was a gang-motivated shooting and the defendant belonged to the rival gang of the victim. Okay. So there were a lot of people, I'm afraid. And this case was passed on several times. The sufficiency of evidence was passed on several times on direct appeal. Well, it's not. Well, and in habeas corpus review as well. I think that was really on a different issue. But, yeah, okay. I'm not saying the evidence is insufficient. I'm just saying it all comes down to the cops either did what these people say or they didn't. That really becomes the issue in a lot of ways because if the cops did what these people say, then there's really no evidence to convict this defendant. The bottom line here is that whether it's civil suits or OPS complaints, even the bribery case, and as I said, it's not substantiated, and that makes it different. That's an important fact because looking at these cases like Coleman and Porter-Bowens and Cassini, it matters whether the officers faced discipline or whether there was no finding in the case. So based on the law, the fact that Judge Leinenweber found no cause of action that was affirmed by the Seventh Circuit Court of Appeals indicates that that's not a case that can be used to demonstrate bias on the part of the officers. It can't be used to impeach them. Was there any restriction on the cross-examination of the recanting witnesses as to their treatment by the police officers? Was the defendant allowed to explore their treatment in front of the officers to explain or to highlight their recantations? My recollection is that was their trial testimony, and they were permitted to testify to what they were saying that was not the case at trial. So presumably, whatever mistreatment or maltreatment they contended they received that evening as the reason for the recantation, that was all brought out before the jury. Well, and that brings up another interesting point. With respect to Kiana Davis's affidavit, that one affidavit does go somewhat to this police misconduct issue. Now, Kiana Davis filed an OPS complaint against two of the detectives, but not all of them. Only Detective Swarberg and Foster, and that complaint went to alleged harassment, meaning that the police doggedly and persistently tried to contact an eyewitness to a murder, and they didn't give up simply because she kept hiding in the attic and wouldn't talk to them. What's glaring in its omission, though, from Kiana Davis's OPS complaint is she does not complain about police misconduct in that OPS complaint, which was made at this time, which was made in 2001, at the time of this trial. Fast forward to her affidavit, which is submitted somewhere around 2016, I believe, 2015, 2016, 2017, in that neighborhood. This is the first time that she's raising an issue of how she was improperly, or the police officers attempted to improperly influence her. Now, in addition to that, there were a number of witnesses that these police officers talked to that were not allegedly improperly influenced. The police never got a statement out of Mario Brown. They never got a statement out of Michael or Stanley Watson. They never got a statement out of Petitioner. And apparently, clearly, they never got a statement out of Kiana Davis. So this is not a sort of overwhelming presence of a police overbearing interrogation that is creating this situation. It's clear that the police talked to a number of people and did not coerce them into making statements that they didn't want to make. So therein lies another issue of law that the defendant has brought up that we need to consider, and that is that at this stage, yes, well-planned facts are taken as true, but there's a caveat on that, a very important one, and that is unless they're rebutted by the record. And in this case, there are contradictions. There are things that rebut the complaints of police misconduct in this case. The fact that they didn't do this to everybody is the rebuttal that they did it to the people that say they did it to them? I don't understand what you say is rebuttal. I would use Occam's razor in this case. The Occam's razor, well, you probably all know it, is the simplest explanation that's best. It's still used today in philosophy and in science. The simplest explanation here is that the defendant was the one that intimidated these witnesses, and the jury already heard all of this. The part that has more moving parts in it is the defendant's claim that the police somehow intimidated some witnesses but not others. That's not the simplest explanation for what happened here. What about the fact that the victim, the only living victim, said, that's not him, doesn't look anything like him, right? He did say that, but he also identified the defendant's car as being on the scene, and so the shooter got out of the defendant's car. He said the shooter got out of the car a month before. That's what he said. That's what the police officer said. He said a month before the shooting, he saw the shooter get out of that car, correct? Isn't that right? You may be right. You may be right. I don't want to argue with you. Like you said, it seems to be pretty un- not really an issue that they're all vice lords. They probably all know each other, right? On the one side, they're vice lords. On the other side, they're just officers. Right. They're talking about the- And there is a tendency to not want to address these issues in court rather than to address them on the street. But I'm just saying, the only person who really has nothing to gain here, nothing- not intimidated by the police or possibly by the defendant, the victim says that's not him, doesn't look anything like him. Correct? He does say that, but again, gang members tend to not want to- even in rival gang situations, they tend not to testify against each other. That's a real-world problem that we have to deal with. We've seen that you've had a number of questions thrown at you. Are there any other issues or points you want to address before your time is concluded? Well, just as Mick pointed out, defendants raise cause of prejudice. I would just quickly make the point that, essentially for the same reasons, that the evidence is not new, it's cumulative, and that it is not of such a conclusive nature that it would change the outcome. For the same reasons that it doesn't meet the actual innocence test, it doesn't rise to the level of the cause of prejudice test. And I realize that it's rumored differently, but certainly the same things need to be shown. New evidence that the defendant was not able to get to previously, and that there was prejudice. But it doesn't need to be freestanding, right? To the extent that it is. For cause of prejudice. Correct. So it can go right to what they were fighting about at trial, which is, which story should we believe? That's true. And that's what most of their evidence goes to, is which story should we believe. Right? Yes. The requirement that the evidence actually go to show that it exonerates and vindicates is not a requirement in cause of prejudice. But as I said before, for all the reasons that I've outlined, it doesn't meet the cause of prejudice test in this case. Respectfully, the people request that this Court affirm defendants, I'm sorry, affirm the ruling below denying leave to file a successive petition, especially given the fact that successive petitions are roundly disfavored. Thank you. Mr. Clark, briefly. I just have one point I'd like to make on rebuttal, and that is that the only evidence in the record that Mr. Jackson had any gang affiliation whatsoever are the statements that we claim were coerced. And with that, I would yield the rest, or I guess I'd conclude, and would ask that the Court reverse the decision below and remand Mr. Jackson's petition for further proceedings. Thank you, Your Honors. Thank you. All right. I'd like to thank the parties for their briefing on this matter. We'll take the matter under advisement. The Court stands in recess.